# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

      Plaintiff,              :          Case No. 3:00-cr-070

                                                             District Judge Walter Herbert Rice
      -vs-                                           Chief Magistrate Judge Michael R. Merz

                                               :

WALTER REAMEY, JR.,

      Defendant.

## REPORT AND RECOMMENDATIONS

This case is before the Court on Defendant Walter Reamey, Jr.'s, Motion to Vacate under 28 U.S.C. § 2255 (Doc. No. 144). The United States has filed an Answer (Doc. No. 150) and Defendant has filed a Reply to that Answer (Doc. No. 151)[1].

Defendant's Motion contains text in four separate portions of the AO 243 Form labeled Grounds for Relief One, Two, Three, and Four. As best the Court can tell, however, Defendant is alleging error in bringing him to Dayton on an arrest warrant issued on perjured grand jury testimony and trying the case in Dayton, Ohio. In addition, he is alleging numerous instances in which he says he was provided ineffective assistance by his appointed trial attorney, Aaron Durden.

---

[1]The Reply consists of two pages with two certificates of service and then hundreds of pages of attachments, some of which are copies of prior documents filed in the case and some of which appear to be original documents. The attachments are not referenced in the body of the Reply. After a copy of the Answer, Defendant attaches a thirteen-page document labeled "Statement of the Case Facts." This is followed by a twelve-page "Statement of Fact." This is followed by an unlabeled twelve-page document. This is followed by nine-page "Supplemental Brief." This is followed by numerous pages of what appear to be copies of documents or parts of documents previously filed in the case, some with original highlighting.

## Procedural History

Defendant was indicted for conspiring to distribute in excess of five kilograms of cocaine. Upon the return of indictment, Judge Rice ordered the indictment sealed (Doc. Nos. 2, 3) issued an arrest warrant for defendant. On August 30, 2000, the undersigned, on Motion of the United States, ordered the Indictment unsealed (Doc. Nos. 4, 5)[2]. Defendant was arrested in Walnut Park, California, and removed to this District after proceedings in the United States District Court of the Central District of California (Doc. Nos. 6, 7, 8). After initial appearance in this District, on Motion of the United States and after a hearing in open court, Defendant was detained without bond (Doc. Nos. 9, 10, 11, 12, & 13).

After arraignment before Judge Rice at which the Defendant pled not guilty, the detention order was continued in effect (Doc. No. 15). In January, 2001, retained counsel L. Patrick Mulligan replaced appointed counsel Jeffrey McQuiston (Doc. No. 21). While Mr. Mulligan was counsel, Defendant filed a motion to change the venue for trial to California (Doc. No. 29). On August 6, 2001, Judge Rice appointed Mr. Durden to replace Mr. Mulligan (Doc. No. 41). Defendant was referred for a competency evaluation but eventually found competent to stand trial (Doc. No. 54). The case was tried to a jury for three days in March, 2002, and the jury returned a guilty verdict (Minutes, Doc. No. 65). On August 22, 2002, Defendant was sentenced to 120 months imprisonment (Doc. Nos. 79, 80).

Defendant appealed, claiming the trial court erred in allowing the government to read certifications of business records to the jury, in allowing identification based upon an unduly suggestive photospread, and in failing to grant a trial continuance based on Defendant's medical

---

[2]Defendant claims that this was an order by Judge Rice to unseal the transcript of grand jury proceedings. The Order dealt with the Indictment only, not the grand jury testimony.

2

condition. These claims were all rejected, but the Sixth Circuit found a remand for resentencing only was required in light of *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). *United States v. Reamey,* 132 F. App'x 613 (6th Cir. 2005)(unpublished)(copy at Doc. No. 119). On August 9, 2005, having previously issued a writ of habeas corpus for Defendant's attendance (Doc. No. 129), the Court reimposed the same 120 month sentence as before (Doc. No. 134). Defendant again appealed to the Sixth Circuit which, finding he had raised no significant legal arguments at resentencing, affirmed again on November 3, 2006 (Doc. No. 141). The instant Motion followed on August 14, 2007.

**Analysis**

A prisoner seeking relief under 28 U.S.C. § 2255 must allege either "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid" *Mallett v. United States*, 334 F. 3d 491, 496-97 (6th Cir. 2003).To obtain relief under 28 U.S.C. §2255, a defendant must establish the denial of a substantive right or defect in the trial that is inconsistent with the rudimentary demands of fair procedure. *United States v. Timmreck,* 441 U.S. 780, 99 S. Ct. 2085, 60 L. Ed. 2d 1634 (1979); *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)(*per curiam*). Relief under 28 U.S.C. § 2255 is available when a federal sentence was imposed in violation of the Constitution or laws of the United States or the trial court was without jurisdiction or the sentence is in excess of the maximum sentence allowed by law, or is "otherwise subject to collateral attack." *United States v. Jalili,* 925 F.2d 889, 893 (6th Cir. 1991). Apart from constitutional error, the question is "whether the claimed error was a 'fundamental defect which inherently results in a complete miscarriage of justice,'" *Davis v. United States*, 417 U.S. 333, 346,

94 S. Ct. 2298, 41 L. Ed. 2d 109 (1974), quoting *Hill v. United States*, 368 U.S. 424, 428-429, 82 S. Ct. 468, 7 L. Ed. 2d 417 (1962). Nonconstitutional claims not raised at trial or on direct appeal are waived for collateral review except where the errors amount to something akin to a denial of due process; mistakes in the application of the sentencing guidelines will rarely, if ever, warrant relief from the consequences of waiver. *Grant v. United States,* 72 F.3d 503, 506 (6th Cir. 1996).

     Persons convicted of federal crimes have a right to appeal to the appropriate circuit court of appeals and to seek review in the United States Supreme Court. Considering the efficiency of having all issues dealt with in one proceeding, the federal courts have encouraged use of direct review to the fullest possible extent. Yackle, POSTCONVICTION REMEDIES, §108 (1981). A motion to vacate under §2255 is not a substitute for direct appeal. *United States v. Duhart,* 511 F.2d 7 (6th Cir. 1975); *DiPiazza v. United States*, 471 F.2d 719 (6th Cir. 1973). Absent manifest injustice or special circumstances such as a change in the law, §2255 motions will be dismissed summarily if they raise claims that were or might have been asserted on direct review. Hertz & Liebman, Federal Habeas Corpus Practice and Procedure 5th, §41.7(e)(2005), *citing, Reed v. Farley*, 512 U.S. 339, 358 (1994); *Withrow v. Williams*, 507 U.S. 680, 721 (1993); *Davis v. United States,* 417 U.S. 333, 342 (1974); *Kaufman v. United States*, 394 U.S. 217, 227 n. 8 (1969); Yackle, POSTCONVICTION REMEDIES, §108 (1981)*,* citing *Mars v. United States,* 615 F.2d 704 (6th Cir. 1980); *Mathews v. United States,* 11 F.3d 583 (6th Cir. 1993).

     Defendant asserts in his first and second Grounds for Relief that Dayton Police Officer Gregory Vance gave perjured testimony to the Dayton federal grand jury to support the Indictment and the resulting arrest in California. Defendant does not say in what particular Officer Vance perjured himself and cannot know what it was that Vance said to the grand jury, since the transcript of grand jury proceedings has never been released to him. It is undoubtedly true that a federal district court has power to issue an arrest warrant which can then be executed anywhere in the

4

United States, as Judge Rice's warrant was. Once the Defendant was before the Court, the question of whether the arrest warrant was properly issued or executed became irrelevant unless the Government relied on evidence obtained from the Defendant as a result of the arrest. To put it another way, Defendant is now incarcerated on the basis of the evidence presented to the trial jury upon which it found beyond a reasonable doubt that Defendant had furnished large quantities of powder cocaine to Daytonians.

Moreover, the question whether venue was proper in Dayton, Ohio, or of whether the Defendant was properly arrested in California and brought to Dayton for trial (if that is a different question from venue) was fully available to the Defendant when he appealed, but was not raised on appeal. Because they were not raised on direct appeal, Grounds One and Two are procedurally defaulted and should be dismissed on the merits.

In his third Ground for Relief, Defendant asserts he received ineffective assistance of counsel from trial attorney Aaron Durden. Although he numbers twenty-three separate paragraphs of complaints in the Motion, he makes numerous additional claims in his Reply.

The governing standard for effective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168, 106 S. Ct 2464, 91 L. Ed. 2d 144 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

An attorney undoubtedly has a duty to consult with the client regarding "important decisions," including questions of overarching defense strategy. *Florida v. Nixon*, 543 U.S. 175, 125 S. Ct. 551; 160 L. Ed. 2d 565 (2004), citing *Strickland*, 466 U.S., at 688. That obligation does not require counsel to obtain defendant's consent to every tactical decision. *Id. citing Taylor v. Illinois*, 484 U.S. 400, 417-418 (1988), holding that an attorney has authority to manage most aspects of the defense without obtaining his client's approval. Certain decisions regarding the exercise or waiver of basic trial rights cannot be made by the attorney. These include whether to plead guilty, waive a jury, testify in his or her own defense, or take an appeal. *Id. citing Jones v. Barnes,* 463 U.S. 745, 751 (1983); *Wainwright v. Sykes*, 433 U.S. 72, 93, n.1 (1977)(Burger, C.J., concurring).

Counsel's tactical decisions are particularly difficult to attack. *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). Indeed, strategic choices by defense counsel are "virtually unchallengeable." *Buell v. Mitchell,* 274 F. 3rd at 337, 359 (6th Cir. 2001), quoting *Meeks v. Bergen*, 749 F. 2nd 322, 328 (6th Cir. 1984).

As to the prejudice prong, the test is whether counsel's errors have likely undermined the reliability of, or confidence in, the result. *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996), citing *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). "Counsel is constitutionally ineffective only if [his or her] performance below professional standards caused the defendant to lose what he otherwise probably would have won." *United States v. Morrow,* 977 F.2d 222 (6th Cir. 1992). Defects in assistance that have no probable effect on the trial's outcome do not establish a constitutional violation. *Mickens v. Taylor,* 535 U.S. 162, 166 (2002).

With this standard in mind, the Court reviews the claims of ineffective assistance made in the Motion.

Defendant claims he had a "reconcilliable difference" with Mr. Durden from the day he was appointed in the case. However, although he made many threats to do so, Defendant never decided to proceed *pro se* in the case. He does not say what those irreconcilable differences were.

Defendant claims Mr. Durden had him evaluated psychologically when he did not want to be so evaluated. However, an attorney who has doubts about his client's competence to stand trial has a duty to resolve those doubts whether or not the client agrees. It could well be the case that a criminal defendant who wants to think of himself as perfectly mentally competent is not in fact competent and acts in ways that raise doubts for his attorney. An attorney cannot ignore those doubts, regardless of what his client's wishes are. Defendant certainly has shown no prejudice from the competency evaluation.

Defendant claims Mr. Durden refused his telephone calls. Mr. Durden provided an affidavit

7

in which he indicated he had a system in place to decline collect calls from jailed clients. Just because Mr. Reamey wanted to talk to Mr. Durden at Mr. Durden's expense whenever Mr. Reamey wanted to call does not prove the result of not taking the calls prejudiced the case.

Defendant claims Mr. Durden advised him not to take the witness stand. Mr. Durden admits that this was so and in fact Mr. Reamey did not testify at trial. Again, Defendant has shown no prejudice as he has not suggested what testimony he would have given which would have improved his chances of acquittal.

Defendant claims Mr. Durden refused to interview a single witness who Mr. Reamey identified to him. Mr. Durden responds in his Affidavit that Mr. Reamey never gave him any names of witnesses to interview. Again, Mr. Reamey has shown no prejudice: who are the witnesses he believes Mr. Durden should have interviewed and what would they have testified to?

Defendant claims he sent Mr. Durden an affidavit notarized in California which would have proved Dayton Police Officer Vance lied to the grand jury and Mr. Durden refused to file a motion related to that affidavit in the Sixth Circuit. The affidavit, apparently prepared in June, 2005, is of Defendant's own testimony, which he did not give at trial because he did not testify. Of course, new evidentiary material cannot be introduced into the record at the Court of Appeals level.

Defendant claims Mr. Durden was counsel for Katrina Stone, one of the witnesses against him. This Court's records show that Katrina Stone was represented by Assistant Federal Public Defender Cheryll Bennett. United States v. Stone, Case No. 3:99-cr-025.

Defendant claims Mr. Durden agreed to plead him guilty when he is in fact innocent of this crime. Of course, there was no guilty plea and Defendant was convicted by a jury at trial.

In sum, Mr. Reamey has not shown Mr. Durden failed to perform properly at any point in these proceedings or that Defendant was prejudiced by anything Mr. Durden did. The third Ground for Relief is without merit.

**Pending Motions**

Defendant's Motion (Doc. No. 146) to be provided with all the evidence the Government used to convict him and all transcripts of court proceedings is denied.

Defendant's Application to Proceed *in forma pauperis* in the present proceeding (Doc. No. 148) is denied as moot; there is no filing fee for a § 2255 motion.

Defendant's Motion for Appointment of Counsel (Doc. No. 149) is denied as no such appointment is required by this Court's Criminal Justice Act Plan.

Finally, the case is before the Court on a nineteen-page document docketed by the Clerk as "Motion for Release of All Transcripts and Evidence" (Doc. No. 152).  At the beginning of the document, Defendant asks this Court "to asked the people of Dayton, Ohio who is representing the government in Dayton, Ohio to released all the transcript and evidence they have on this case . . ."  The gravamen of the document is that Defendant again claims he is innocent of the crime of which he was convicted and somehow Attorney Durden is responsible for that conviction.  The Motion is denied.

**Conclusion**

Defendant's Motion to Vacate should be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, Defendant should be denied leave to appeal *in forma pauperis* and any requested certificate of appealability.

May 24, 2008.

                       s/ **Michael R. Merz**
                      Chief United States Magistrate Judge

9

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).